UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA MARIA BOJORQUEZ VALDEZ, | Civil No. 10cv733-L(BGS) |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO STRIKE** |
| v. | |
| MAYA PUBLISHING GROUP LLC d/b/a TVnotas, | |
| Defendant. | |

Plaintiffs filed a defamation action in state court against Defendant Maya Publishing Group LLC. The action was removed to this court based on diversity jurisdiction pursuant to 28 U.S.C. Sections 1332 and 1441. Plaintiffs alleged they were defamed in two articles published by Defendant wherein they were portrayed as abandoning their seriously ill mother and committing a number of crimes against her. Defendant filed a motion to strike pursuant to Section 425.16 of California Code of Civil Procedure. Plaintiffs filed an opposition. For the reasons which follow, Defendant's special motion to strike is **DENIED.**

Eva Maria Bojorquez Valdez, Cecilia del Carmen Bojorquez Valdez, Clelia Cristina Bojorquez Valdez and Maria del Pilar Guardiola Valdez ("Eva Maria," "Cecilia," "Cristina" and "Maria del Pilar,"[1] respectively; collectively "Plaintiffs") are daughters of a popular Mexican

---

[1] No disrespect is intended by referring to Plaintiffs individually by their first names.

singer Chayito Valdez ("Chayito").  On November 17 and 24, 2009 Defendant, who publishes TV Notas USA, a weekly Spanish-language magazine focusing on Latin American personalities, published articles which included allegedly defamatory statements.  In 1985 Chayito suffered an automobile accident which left her confined to a wheelchair.  In 2003 she suffered a brain injury, and has been in near vegetative state hospitalized at Sharp Coronado Hospital since then.  Chayito, her medical condition and relationship with her daughters have been the subject of Spanish-language media during this time, including five articles and a television broadcast prior to Defendant's two November 2009 articles.  Defendant's November 2009 articles state, among other things, that some or all of the Plaintiffs kidnaped Chayito, sequestered her at the hospital and then abandoned her, that they stole Chayito's money, truck, jewelry and real estate, and that they hit her.  Plaintiffs filed a complaint alleging that these statements were defamatory.

Defendant moved to strike the first amended complaint pursuant to California Code of Civil Procedure Section 425.16 ("Anti-SLAPP Motion").  California legislature enacted section 425.16 ("Anti-SLAPP Law") to stem "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Code Civ. Proc. § 425.16(a).  Based on policy considerations, section 425.16 is construed broadly.  *Id*.  Under the statute,

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Id*. § 425.16(b)(1).  Defendant argues the action is barred because it is baseless and arises out of communications in furtherance of its constitutional right to free of speech in connection with an issue of public interest.

Ruling on an anti-SLAPP motion entails a two-step process:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech . . .. If the court finds such a showing has been made, it then determines

whether the plaintiff has demonstrated a probability of prevailing on the claim. *Equilon Enters, LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (internal quotation marks, citations and brackets omitted).

With respect to the "threshold showing," the Anti-SLAPP Law protects four categories of acts. *See* Cal. Code Civ. Proc. § 425.16(e). Defendant, a magazine publisher, argues that this case fits into the third category, which applies to "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *Id.* § 425.16(e)(3). Accordingly, Defendant must show that the articles were published in connection an issue of public interest. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010), citing *Equilon Enters*, 29 Cal.4th at 67.

Chayito is a popular Mexican singer. (First Am. Compl. at 3.) Nevertheless, Plaintiffs dispute that the articles relate to an issue of public interest because "at issue . . . is essentially gossip" about how Plaintiffs allegedly mistreated her, and because this is a private family matter. (Opp'n at 6.) Plaintiffs suggest that an issue of public interest must affect the community in a manner similar to that of a governmental entity, which is not the case here. (Opp'n at 3-5.) This argument has been rejected by California Supreme Court. *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1116 (1999).

Although "issue of public interest" is not defined in the statute and "[t]he California Supreme Court has not clearly established what constitutes an issue of public interest," it has insisted on closely following the terms of the statute, including its preamble, which calls for a broad construction. *Hilton*, 599 F.3d at 905-06, citing *Equilon Enters*, 29 Cal.4th at 59-60. The decisions of California Courts of Appeal have not adhered to the same standard for defining "an issue of public interest." *Hilton*, 599 F.3d at 906-08. However, the distinctions among California Appellate Districts do not affect the outcome of this case.

The more restrictive standard, urged by Plaintiffs, was established in *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (3rd Dist. 2003). It involves several guiding principles:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is

>
> not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure. A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Id.* at 1132-33 (internal quotation marks, brackets, ellipsis and citations omitted); *see also Terry v. Davis Comm. Church*, 131 Cal. App. 4th 1534, 1546-47 (3rd Dist. 2005); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 110 (4th Dist. 2007).

It is undisputed that Chayito is a popular singer with many fans. Her condition, accessibility, likelihood that she may again perform, and the effect the relationship with her daughters has on these issues are of concern to them. *See, e.,g., McGarry*, 154 Cal. App. 4th at 109 & 110 (public interest found because college football coach occupies high-profile position in city's athletic community). Prior to the allegedly objectionable articles, four other magazine articles and a television program about Chayito covered her medical situation and alleged mistreatment by her daughters.[2] There is a close relationship between the public's interest in Chayito and her plight on one hand, and the articles about how she is doing and how this is affected by her daughters on the other hand. There is no indication in the record that the two articles were published as an "effort to gather ammunition for another round of private controversy." *Weinberg*, 110 Cal. App. 4th at 1132-33. Instead, they appear to be a response to the public interest in a long-lasting controversy. Accordingly, Defendant met the threshold requirement that the articles be published in connection with an issue of public interest. Plaintiffs' claim therefore arises from Defendant's activity protected by the First Amendment.

Defendant, however, has only passed the threshold. "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even the minimal merit – is a SLAPP, subject to being stricken under the statute."

---

[2] The first article was published in the May 3, 2004 issue of TV y Novelas, followed by a television program on November 7, 2007 broadcast by TV Azteca, and three magazine articles published on February 12, 2008, September 1, 2009 and October 13, 2009, respectively. (Def.'s Exh. B-F.) The latter three articles were published by Defendant.

*Navellier v. Sletten,* 29 Cal.4th 82, 89 (2002). "Probability of prevailing on the claim," the second step of the anti-SLAPP inquiry, *Equilon*, 29 Cal.4th at 67, "requires only a minimum level of sufficiency and triability [and] is often called the minimal merit prong." *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (internal quotation marks and citations omitted); *see also Navellier*, 29 Cal. 4th at 89, 93-94, 95.

> To establish minimal merit, the plaintiff need only state and substantiate a legally sufficient claim. Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. [¶] While a court's evaluation of a claim under the anti-SLAPP statute has been called a summary-judgment-like procedure, a motion to strike does not impose an initial burden of production on the moving defendant. The applicable burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff. The court does not weigh the credibility or comparative probative strength of competing evidence, but should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.

*Mindy's Cosmetics*, 611 F.3d at 598-99 (internal quotation marks and citations omitted).

Defendant initially argued that Plaintiffs could not show probability of prevailing on a defamation claim because the two articles did not contain any provably false factual assertions but only opinions. (Def.'s Mem. of P.&A. at 14 & 16-17.) It has since withdrawn this argument. (*See* Reply at 7.) Defendant admits that the statements in the articles that Plaintiffs stole from their mother and hit her constitute factual statements that are potentially actionable. (Reply at 7; *see also* Def.'s Exh. G & J.) The first element of defamation, that the statements be provably false factual assertions, *see Nygaard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1048-49 (2008), is therefore met.

Defendant also argues, without providing citations to legal authority, that it cannot be held liable because the allegedly defamatory statements were not its own but were expressly attributed to other sources. (Def.'s Mem. of P.&A. at 15-16.) Repeating a defamatory statement originated by another party does not insulate a defendant from liability. *Shively v. Bozanich*, 31 Cal.4th 1230, 1243 (2003); *Khawar v. Globe Int'l, Inc.*, 19 Cal.4th 254, 268 (1998). Defendant did not identify or cite to any particular privilege which arguably could provide an exception to this rule. *See Khawar*, 19 Cal.4th at 268 & n.1. Accordingly, Defendant's argument is rejected.

1       Defendant next contends that Plaintiffs are public figures and therefore must comply with
2 a higher standard for defamation, and that they cannot meet the probability of success
3 requirement on that standard. A public figure may recover damages only if the defamatory
4 statement was made with actual malice, "that is, with knowledge that it was false or with
5 reckless disregard of whether it was false or not." *Khawar*, 19 Cal.4th at 262 (internal quotation
6 marks and citations omitted); *see also id.* at 263. Although Plaintiffs dispute that any one of
7 them is a public figure, the court need not reach this issue, because Plaintiffs made a sufficient
8 prima facie showing of malice for purposes of Defendant's motion to strike.

9       Defendant first argues that Plaintiffs cannot meet their burden to show actual malice
10 because they failed to comply with the requirement of California law that malice must be pled
11 with particularity. (Def.'s Mem. of P.&A. at 21.) Although California substantive law of
12 defamation applies in this diversity action, *see Intri-Plex Technol., Inc. v. Crest Group, Inc.*, 499
13 F.3d 1048, 1052 (9th Cir. 2007) & *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), where an issue
14 is directly covered by Federal Rules of Civil Procedure, federal law controls. "The Federal
15 Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and
16 irrespective of whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy*
17 *Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003), citing *Hanna v. Plumer*, 380 U.S. 460 (1965).
18 It is immaterial that the claim sued upon arises under state law and a different result would have
19 been reached in a state court action. *Vess*, 317 F.3d at 1102. Manner of pleading is directly
20 covered by Rules 8 and 9. They do not provide for a heightened pleading requirement of malice.
21 To the contrary, "[m]alice, intent, knowledge, and other conditions of a person's mind may be
22 alleged generally." Fed. R. Civ. Proc. 9(b). California's particularity requirement therefore does
23 not apply.

24       Next, Defendant maintains that all of the evidence submitted by Plaintiffs in support of
25 actual malice is weak. (Reply at 6-7.) This is irrelevant, because for purposes of an anti-SLAPP
26 motion, "the court does not *weigh* the credibility or comparative strength of the competing
27 evidence." *Taus v. Loftus*, 40 Cal.4th 683, 714 (2007) (emphasis in original); *see also Mindy's*
28 *Cosmetics*, 611 F.3d at 599. All the plaintiff must demonstrate is that the claim is "supported by

a prima facie showing of facts to sustain a favorable judgment *if the evidence submitted by the plaintiff is credited.*" *Taus*, 40 Cal.4th at 713-14 (internal quotation marks and citations omitted, emphasis added); *see also Mindy's Cosmetics*, 611 F.3d at 599.

Last, Defendant argues that Plaintiffs' evidence of malice is insufficient. Plaintiffs contend that Defendant acted with actual malice when it published the defamatory statements because it failed to investigate. A publisher "acts with reckless disregard amounting to actual malice if, at the time of publication, the publisher in fact entertained serious doubts as to the truth of his publication." *Khawar*, 19 Cal.4th at 262 (internal quotation marks and citations omitted).

> Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category. Inaction, i.e., failure to investigate, which was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the subject charges will support a finding of actual malice.

*Antonovich v. Super. Ct. (Schwellenbach)*, 234 Cal. App. 3d 1041, 1048 (1992), quoting *Harte-Hanks, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (internal quotation marks, brackets and citations omitted).

In an effort to negate Plaintiffs' showing, Defendant filed a declaration of its General Manager. She stated she had "no reason to entertain any doubt as to the truth of the publication, i.e., that the Declarants made the statements reported." (Decl. of Ana Laura Rivaroli.) Even if the General Manager stated that she had no reason to entertain doubts that the statements in the articles were true, and she has not so stated, the declaration would not necessarily be sufficient to ensure that Defendant would prevail. *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1134-35 (9th Cir. 2003), quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("The defendant in a defamation action . . . cannot . . . automatically insure a favorable verdict by testifying that he published with a belief that the statements were true.")

Two alternative tests apply for proving malice by reckless disregard:

> Where the jury has proof that a publisher actually had a high degree of awareness of probable falsity, that alone will establish that it in fact entertained serious doubts as to the truth of its publication. Where such direct proof is missing, the jury may nevertheless infer that the publisher was aware of the falsity if it finds that there were obvious reasons to doubt the accuracy of the story, and that the defendant did

not act reasonably in dispelling those doubts.

*Suzuki Motor Corp.*, 330 F.3d at 1134 (internal quotation marks, brackets, ellipsis and citation omitted).  Accordingly, "a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence."  *Harte-Hanks*, 491 U.S. at 668.  Factors such as failure to investigate, financial motive, anger and hostility, and reliance on sources known to be unreliable or biased, may constitute circumstantial evidence of malice, although any one of these factors standing alone may be insufficient.  *Id.*; *Suzuki*, 330 F.3d at 1136; *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167 (2004).

Plaintiffs argue that Defendant was reckless in publishing the November 2009 articles by relying on a hostile and biased source, and deciding not to acquire knowledge of facts which might confirm the probable falsity of the statements.  The source for the November 17, 2009 article, which bore the headline, "Chayito Valdez' daughters hit, robbed and abandoned her," is Elena Medina, Chayito's friend who was her personal assistant before the 2003 brain injury. (Def.'s Exh. G; Decl. of Elena Medina ¶ 9.)  The article included excerpts from documents Ms. Medina shared with the reporter and identified as Chayito's diary, letter and song lyrics.  ( Decl. of Elena Medina ¶ 9; Decl. of Ana Lilia Cortes ¶ 15.)  Although the November 24, 2009 article was an interview with two other subjects, their statements, specifically as they relate to Plaintiffs' alleged criminal acts, appear to be based on Ms. Medina's November 17 interview. (*See* Def.'s Exh. J.)  In addition, the November 24, 2009 article ends with a summary of prior articles, and includes some of the allegedly defamatory statements stated in the November 17 article.  (*Id.*)  As far as can be discerned from the record supplied by the parties, the defamatory statements in both articles, particularly allegations of Plaintiffs' criminal conduct, originated with Ms. Medina.

Plaintiffs contend that Defendant had reason to doubt the veracity of Ms. Medina's statements and the authenticity of the documents she provided for the interview, but in an attempt to avoid the truth, decided not to investigate.  Plaintiffs filed declarations identifying Ms. Medina's statements they contend are false and explaining that Ms. Medina had a motive to lie because the family members suspected her of abusing Chayito's trust prior to the brain injury

and of involvement in causing the brain injury in 2003.  Based on these suspicions, the family barred Ms. Medina from visiting Chayito at the hospital, which angered Ms. Medina.  (*See, e.g.,* Eva Maria Decl. ¶¶ 4, 5; Cecilia Decl. ¶¶ 4, 5; Cristina Decl. ¶¶ 4, 5; Maria del Pilar Decl. ¶¶ 4, 5; Juana Maria Valdez Decl. ¶4; Lisete Sandoval Lopez Decl. ¶ 7.)

Although at the time of publication Defendant may not have been aware of the specifics contained in Plaintiffs' declarations, Ms. Medina's hostility toward Plaintiffs, anger for having been precluded from visiting Chayito at the hospital, and her bias were apparent in the media available prior to the November 2009 articles, as well as in Ms. Medina's November 17, 2009 interview for Defendant's own article.  For example, the November 7, 2006 television program pointed out that Eva Maria had accused Ms. Medina of "abuse of trust and theft" while serving as Chayito's personal assistant, and that she precluded Ms. Medina from visiting Chayito at the hospital.  (Def.'s Exh. C.)  Ms. Medina's anger for having been excluded is apparent in the same program, as well as in her November 17, 2009 interview.  (*Id*. & Def.'s Exh. G.)  Finally, since the 2006 television program, it has been apparent that Ms. Medina's version of Chayito's situation is very different from Plaintiffs.'  For example, in the same television program where Eva Maria accused Ms. Medina of abuse of trust and theft, Ms. Medina accused Eva Maria and Cristina of various wrongdoing toward their mother.  (Def.'s Exh. C; *see also id.* Exh. D (Defendant's interview with Cristina, published Feb. 12, 2008).)  From the foregoing, a fact finder can infer that prior to publication of the November 17, 2009 article, Defendant had obvious reasons to doubt the accuracy of the grave accusations made therein.  *See Suzuki Motor Corp.*, 330 F.3d at 1134.

Nevertheless, Defendant did not make any serious attempt to follow up on Ms. Medina's statements or authenticity of the documents she offered in support.  It filed a declaration of the reporter, who stated that she attempted to interview Plaintiffs by contacting Eva Maria at the phone number and address listed in the phone book and inquired with Chayito's former nurse about Plaintiffs' whereabouts, but was unsuccessful.  (Decl. of Ana Lilia Cortes, ¶¶ 18 & 19.)  Plaintiffs argue that this was at best a half-hearted attempt because Defendant was successful in locating Cristina for a previously-published interview.  (*See* Def.'s Exh. D.)  Aside from reliance

on Ms. Medina's own assertions (Decl. of Ana Lilia Cortes ¶ 15), the reporter's declaration does not show that any attempt was made to verify whether the unsigned hand-written documents which Ms. Medina attributed to Chayito were in fact in Chayito's handwriting. (Def.'s Exh. H & I.) Declarations filed by Plaintiffs show that Defendant did not contact any of Chayito's family members who could to verify whether Ms. Medina's allegations of criminal wrongdoing were true or simply to determine whether the hand-written documents were authentic.

From the foregoing, a fact finder could infer that prior to publication of the November 17, 2009 article, there were obvious reasons to doubt the accuracy of Ms. Medina's statements made therein and that Defendant did not act reasonably in dispelling those doubts, but was instead avoiding the truth. *See Suzuki Motor Corp.*, 330 F.3d at 1134; *Harte-Hanks*, 491 U.S. at 692. In cases such as this, "involving the reporting of a third party's allegations, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Harte-Hanks*, 491 U.S. at 688 (internal quotation marks and citation omitted). Even if some attempt was made to locate Plaintiffs, this does not necessarily negate a finding of malice. *See id.* at 682-83, 692 (malice found despite extensive investigation where the person who was most likely to confirm the truthfulness of the account was not interviewed). Accordingly, Plaintiffs have made a sufficient prima facie showing of facts to carry their burden with respect to the "minimal merit prong" of the anti-SLAPP analysis. *See Mindy's Cosmetics*, 611 F.3d at 598.

As Defendant's motion does not challenge Plaintiffs' ability to make a sufficient showing on any other elements of defamation, Defendant's motion to strike is **DENIED**.

**IT IS SO ORDERED**.

DATED: June 15, 2011

M. James Lorenz
United States District Court Judge

HON. BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL